AO 106 (Rev. 04/10) Application for a Search Warrant

E-FILED
Tuesday, 27 November, 2018 01:11:31 PM
Clerk, U.S. District Court, ILCD

FILED

NOV 27 2018

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )       Case No. 18-MJ- 7179
**premises commonly known as 607 Wingstem Drive,** )
**Saint Joseph, Illinois, 61873, more particularly described** )
**in Attachment A** )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

premises commonly known as 607 Wingstem Drive, Saint Joseph, Illinois, 61873, more particularly described in Attachment A

located in the _____Central_____ District of _____Illinois_____ , there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18:2252 and 18:2252A | Child Pornography Trafficking |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT OF SPECIAL AGENT MICHAEL A. CARTER, FBI.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/Michael Carter

_____
*Applicant's signature*

MICHAEL A. CARTER, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.          s/Eric Long

Date: 11/27/2018

_____
*Judge's signature*

City and state: Urbana, Illinois          ERIC I. LONG, Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Michael A. Carter, Special Agent of the Federal Bureau of Investigation (FBI), United States Department of Justice, having been first duly sworn, do hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), assigned to the Springfield, Illinois, Division.  I have been employed as a Special Agent for the FBI since August 2016.  As part of my duties, I investigate violations of federal law relating the online exploitation of children, including violations pertaining to the illegal possession, receipt, transmission, and production of material depicting the sexual exploitation of minors. Prior to becoming a Special Agent with the FBI, I was a Police Officer for the Johnson City Police Department in Johnson City, Tennessee, for approximately five years and three months. During my tenure, I investigated various misdemeanor and felony violations of law, and was the affiant on numerous state search warrants.

2.      I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of, and to make arrests for, child exploitation and child pornography offenses enumerated in Title 18, United States Code, Sections 2252 and 2252A *et seq*. As an FBI Special Agent, I am authorized to execute warrants issued under the authority of the United States.

1

3.      This affidavit is made in support of a warrant to search the premises of 607 Wingstem Drive, Saint Joseph, Illinois 61873, a tan colored two story residence with dark colored shutters and the numbers "607" displayed above the garage door (hereinafter referred to as the "Subject Premises"), described in Attachment A, for the items specified in Attachment B, which items constitute instrumentalities, fruits, and evidence of the violation of Title 18, United States Code, Sections 2252 and 2252A.

4.      As will be shown below, there is probable cause to believe that an individual at the Subject Premises has possessed visual depictions of minors engaged in sexually explicit conduct (as defined in 18 U.S.C. § 2256) ("child pornography") in violation of Title 18, United States Code, Sections 2252 and 2252A. I am requesting authority to search the entire Subject Premises, including locked containers therein, any vehicles parked upon the property associated with the dwelling, as well as any computer, smartphone and computer media located therein where the items specified in Attachment B may be found, and to seize all items listed in Attachment B as instrumentalities, fruits, and evidence of crime.

5.      The statements contained in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violation of Title 18, United States Code, Sections 2252 and

2252A are presently located at the Subject Premises. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## RELEVANT STATUTES

6.      This investigation concerns alleged violations of Title 18, U.S.C. § 2252A relating to material involving the sexual exploitation of minors:

- **Child Pornography Trafficking (18 U.S.C. § 2252):** This investigation concerns alleged violations of **18 U.S.C. § 2252**, which generally prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any visual depiction of minors engaging in sexually explicit conduct when such visual depiction was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such visual depiction was produced using materials that had traveled in interstate or foreign commerce.  It is also a crime to attempt to commit this offense.

- **Child Pornography Trafficking (18 U.S.C. § 2252A):** This investigation also concerns alleged violations of **18 U.S.C. § 2252A**, which generally prohibits a person from knowingly mailing, transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any child pornography, as defined in 18 U.S.C. § 2256(8), when such child pornography was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such child pornography was produced using materials that had traveled in interstate or foreign commerce.  It is also a crime to attempt to commit this offense.

## DEFINITION OF TERMS

7.      The following terms have the indicated meaning in this affidavit:

- The term "minor" is defined at 18 U.S.C. § 2256(1) as any person under the age of eighteen years.

- The term "sexually explicit conduct" is defined at 18 U.S.C. § 2256(2)(A) as actual or simulated - (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or anal-oral, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person.

- The term "email" (electronic mail) is defined as the text messages sent from one person to another via a computer, which may include images.  Email can also be sent automatically to a large number of addresses via a mailing list.

- The term "Internet" is defined as the worldwide network of computers, a noncommercial, self-governing network devoted mostly to communication and research with roughly 500 million users worldwide.  The Internet is not an online service and has no real central hub.  It is a collection of tens of thousands of computer networks, online services, and single user components.  In order to access the Internet, an individual computer user must use an access provider, such as a university, employer, or commercial Internet Service Provider ("ISP"), which operates a host computer with direct access to the Internet.

- The term "IP" (Internet Protocol) is defined as the primary protocol upon which the Internet is based.  An IP allows a packet of information to travel through multiple networks (groups of linked computers) on the way to its ultimate destination.

- The term "IP Address" is defined as a unique number assigned to every computer directly connected to the Internet (for example 173.18.96.176).  Each computer connected to the Internet is assigned a unique IP address while it is connected.  By providing the Internet service provider with the dates, times and IP addresses which a suspect used to access the Internet, the Internet service provider will be able to provide the identifying information for the account holder who was assigned that specific IP address at that date and time, if the records still exist on their system.  The IP address for a user may be

4

relatively static, meaning it is assigned to the same subscriber for long periods of time, or dynamic, meaning that the IP address is only assigned for the duration of that on-line session.

- The term "ISP" (Internet Service Provider) is defined as a business that allows a user to dial into or link through its computers thereby allowing the user to connect to the Internet for a fee. ISPs generally provide only an Internet connection, an electronic mail address, and maybe Internet browsing software. A user can also connect to the Internet through a commercial online service such as America Online, Earthlink, or MSN. With this kind of connection, the user gets Internet access and the proprietary features offered by the online service, such as chat rooms and searchable databases.

- The term "Online Chat Room" is defined as the real time visual interface which displays messages and responses of participants who are using online chat. Chat rooms are usually devoted to specific topics such as US politics; however, there are a number of general chat rooms which are devoted to any issue the participants wish to bring up. Participants usually communicate by typing their contributions into a simple text box line by line. The primary use of a chat room is to share information via text with a group of other users. New technology has enabled the use of file sharing and webcams to be included in some programs and almost all Internet chat rooms or messaging services allow users to display and/or send pictures.

- The term "Open Source" or "Open Source Software" is defined as software that makes available the software's source code. This enables the software to be viewed and changed by a programmer.

- The term "web site" consists of text pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from the web servers to various web clients via Hyper-Text Transport Protocol.

- The term "computer system and related peripherals, and computer media" as used in this affidavit refers to tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drives and other computer-related operation equipment, digital cameras, scanners, in addition to computer photographs, Graphic Interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats, including, but not limited to, JPG, GIF, TIF, AVI, and MPEG.

## COMPUTERS AND CHILD PORNOGRAPHY

8.      Based upon my knowledge and training in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers and computer technology have revolutionized the way in which child pornography is produced, distributed and utilized. Prior to the advent of computers and the Internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these images on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths. More recently, through the use of computers and the Internet, distributors of child

pornography can use membership-based/subscription-based Web sites to conduct business, allowing them to remain relatively anonymous.

9.      In addition, based upon my own knowledge and training in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, the development of computers has also revolutionized the way in which child pornography collectors interact with, and sexually exploit, children. Computers serve four basic functions in connection with child pornography: production, communication, distribution, and storage. More specifically, the development of computers has changed the methods used by child pornography collectors in these ways:

- Producers of child pornography can now produce both still and moving images directly from a common video or digital camera. The camera is attached, using a device such as a cable, or digital images are often uploaded from the camera's memory card, directly to the computer. Images can then be stored, manipulated, transferred, or printed directly from the computer. Images can be edited in ways similar to how a photograph may be altered. Images can be lightened, darkened, cropped, or otherwise manipulated. The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer-readable format. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. In addition, there is an added benefit to the pornographer in that this method of production does not leave as large a trail for law enforcement to follow.

- The Internet allows any computer to connect to another computer. By connecting to a host computer, electronic contact can be made to literally millions of computers around the world. A host computer is one that is attached to a network and serves many users. Host computers are sometimes operated by commercial ISPs, such as

Microsoft, which allow subscribers to dial a local number and connect to a network, which is in turn, connected to the host systems. Host computers, including ISPs, allow e-mail service between subscribers and sometimes between their own subscribers and those of other networks. In addition, these service providers act as a gateway for their subscribers to the Internet or the World Wide Web.

- The Internet allows users, while still maintaining anonymity, to easily locate (i) other individuals with similar interests in child pornography; and (ii) Web sites that offer images of child pornography. Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions between child pornography collectors over the Internet. Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache to look for "footprints" of the Web sites and images accessed by the recipient.

- The computer's capability to store images in digital form makes it an ideal repository for child pornography. A single compact disk can store dozens of images and hundreds of pages of text. The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years. Hard drives with the capacity of 500 gigabytes are not uncommon. These drives can store tens of thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of

the crime." Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

10.     Collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

11.     As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains P2P software, when the computer was sharing files, and many of the files which were uploaded or downloaded. Such

information is often maintained indefinitely until overwritten by other data. This indefinite retention of information is true even if the computer user has deleted the material. A trained forensic computer examiner can recover files that have been deleted even if the deletion occurred long ago.

12.     Based on my training, experience in numerous related investigations and search warrants, and the experience of other investigators I have talked with, I know that it is common for items of digital media, including but not limited to laptop computers, flash drives, cameras, cell phones, and digital music devices to be transported or stored in motor vehicles. I know that because of the relatively small sized nature of digital media, including those listed above, that there is equal reason to believe that such items can be found on a subject's person or in their motor vehicle.

## INVESTIGATION

13.     The National Center for Missing and Exploited Children (hereinafter referred to as "NCMEC") is a national clearinghouse that gathers information about missing and exploited children for law enforcement use. NCMEC forwards all information to law enforcement agencies for investigation and disposition pursuant to its Congressional mandate to operate as a clearinghouse. NCMEC operates the CyberTipline and the Child Victim Identification Program (CVIP) to provide assistance to law enforcement in its efforts to identify victims of child pornography and child sexual exploitation.

14.     On July 9, 2018, at approximately 10:13 pm Central Time, the Microsoft Corporation (hereinafter referred to as "Microsoft") detected that a child pornographic

image had been uploaded by means of BingImage. Microsoft provided this information to NCMEC, and for an unknown reason, NCMEC generated two tips for the same event. The tips were memorialized by NCMEC in report numbers 36329202 and 36267265. Microsoft further reported to NCMEC that the child pornographic image had been detected coming from an IP address of 98.253.61.236.

15.    On August 6, 2018, at approximately 10:02 Central Time, Microsoft detected another child pornographic image that had been uploaded by means of BingImage. Again, they provided the information to NCMEC. In the same fashion as before, NCMEC generated two tips for this event, which were memorialized in report numbers 38320482 and 38319661. This image was detected from the same IP address as the prior image, 98.253.61.236.

16.    This matter was referred to the Champaign County Sheriff's Office and assigned to Investigator Dwayne Roelfs. It was determined that the Internet Service Provider (ISP) for IP address 98.253.61.236 at the time the images were uploaded was Comcast. Investigator Roelfs issued two separate subpoenas to Comcast requesting that they disclose which subscriber was assigned to IP address 98.253.61.236 at the time the images were uploaded. Comcast sent a return for the first subpoena, which requested information from the first upload on July 9, 2018, which was as follows:

> -Subscriber Name: William Bell
> -Service Address: 607 Wingstem Dr., Saint Joseph, IL 61873-8218
> -Telephone #: (217) 469-2354
> -Type of Service: High Speed Internet Service
> -Account Number: 8771403240008678

Comcast later sent the return for the second subpoena, which requested information relating to the second upload on August 6, 2018. This returned subscriber information was identical to that received in the first return, which is detailed above.

17.    During the course of this investigation, assistance from the Federal Bureau of Investigation was requested, and Affiant was assigned as the Case Agent. Affiant and Investigator Roelfs have both viewed the images which were uploaded from IP address 98.253.61.236 and have determined that they are in fact child pornographic in nature. The images are further described as follows:

- Image 1 (referenced in NCMEC report # 36329202 and # 36267265): This image depicted a young female, approximately eleven (11) to fourteen (14) years of age lying on a couch on her side. The female was completely naked with her head resting on her hand as if she was posing for a photo. One leg was lying straight on the couch, while the other leg was propped up onto the back of the couch, making the female's legs spread open. As a result, the female's vagina is clearly displayed in the photo in a lascivious manner. Also, the female's breasts are clearly visible.
- Image 2 (referenced in NCMEC report # 38320482 and # 38319661): This image depicted a young female, approximately eleven (11) to fourteen (14) years of age, lying on some bedding on her back. The female was completely naked and her legs were spread open, making her vagina the focal point of the image. Furthermore, it appeared that the female was either sleeping or unconscious when the image was taken. It also appeared that there was clear/white liquid, consistent with the appearance of semen, on the female's vaginal area, lower abdomen, and the sheets.

18.    Affiant contacted Microsoft and spoke with an employee from the legal department to gather further information about BingImage. The employee advised that BingImage was in internet search engine provided by Bing. The user of BingImage

would upload an image into the search field, and the search engine would conduct the search based on the image. Results from the search may include information such as where the image could be located on the internet. To simplify the explanation, the employee stated that BingImage is essentially an internet search using an image instead of words. The employee likened BingImage to Google Image search.

19.     A database check was conducted for driver license information of BELL. It was determined that he did have a driver license, and that the address on file for the license was 607 Wingstem Dr., Saint Joseph, IL 61873. Additionally, Investigator Roelfs queried the Champaign County Assessor's property tax records, and the listed owner of the Subject Premises is WILLIAM M. BELL. Other database checks indicated that BELL has had connection to the Subject Premises since September 2001.

20.     Affiant conducted physical surveillance at the Subject Premises on November 7, 2018, and observed it to be a tan colored two story residence with dark colored shutters and the numbers "607" displayed above the garage door. No vehicles were present at the time surveillance was conducted. Affiant conducted a wi-fi sweep while parked directly in front of the Subject Premises. Several wi-fi networks were discovered, but all required a password to connect to the network. No unsecure networks were located.

21.     On November 26, 2018, affiant conducted physical surveillance on the known residence of BELL. At approximately 7:25 am Central Time, a black GMC sport utility vehicle, possibly an Acadia or a Terrain, was observed leaving the residence. Affiant confirmed the tag on the vehicle was "W BELL", which had been previously

13

identified by law enforcement as being registered to BELL. Affiant was unable to positively identify BELL as the driver. However, the driver was observed to be a middle aged white male, which is consistent with the general description of BELL.

## BACKGROUND REGARDING
## CHILD PORNOGRAPHY COLLECTORS

22.      As a result of my knowledge and training in child exploitation and child pornography investigations, as well as my consultations with other law enforcement officers who have considerable experience investigating the sexual exploitation of children, the undersigned affiant has learned about the individuals engaged in child exploitation activities and about the computer technology available to, and utilized by, those individuals. The undersigned has learned that individuals engaged in the production, procurement, trade, and/or transmission of child pornography through the United States mail, computer or other interstate conveyance commonly:

- receive sexual gratification and satisfaction from actual physical contact with children and from fantasy that may be stimulated by producing and viewing children engaged in sexual activity or in sexually suggestive poses;

- own and operate photographic production and reproduction equipment.  This equipment is often digital cameras which include both cameras which take still images and movie files;

- collect sexually explicit or suggestive materials of adults and/or children consisting of photographs, magazines, motion pictures, videotapes, books, slides, computer images, drawings or other visual media for their own sexual arousal and gratification, and in some instances, to lower the inhibitions of children they are attempting to seduce, and/or to arouse and to demonstrate their desired sexual acts to their selected partners;

14

- often do not dispose of their collection of sexually explicit material, in the event that the material is discarded or lost due to computer malfunction, these individuals often replenish their supply of child pornography very quickly;

- correspond with individuals who share their same interest in child pornography, and maintain their names, addresses, telephone numbers, and other identifying information in lists, telephone books, address books, scraps of paper, or on computer disks;

- obtain, collect and maintain photographs of children they are or have been involved with, which may depict children fully clothed, in various states of undress, totally nude, or in various activities, which are often held for lengthy periods of time;

- collect books, magazines, newspapers and other writings on the subject of sexual activity with children in order to understand their own feelings toward the children to justify their feelings, and to find countenance for their illicit behavior and desires;

- commonly collect items which could be any material relating to children that serve a sexual purpose for a given individual, these items as used herein, have been termed "child erotica" and so defined by now retired Special Agent Ken Lanning, Federal Bureau of Investigation. *See* Kenneth Lanning, *Child Molesters: A Behavioral Analysis* (2010) http://www.missingkids.com/en_US/publications/NC70.pdf (last visited June 12, 2017) at page 65. Some of the more common types of "child erotica" include photographs that are not sexually explicit, drawings, sketches, fantasy writings, diaries, and sexual aids. Federal courts have recognized the evidentiary value of child erotica and its admissibility in child pornography cases. *United States v. Riccardi*, 258 F.Supp.2d 1212 (D. Kan. 2003); *United States vs. Caldwell*, 181 F.3d 104 (6th Cir. 1999)(unpublished) (child erotica admissible under Federal Rules of Evidence 404(b) to show knowledge or intent);

- often do not discard the child exploitation material but collect it over a long period of time and maintain this material in the privacy of their homes. Sometimes, individuals using peer to peer software will engage in a routine where they may delete their child exploitation material after they have viewed it a number of times and then after the deletion occurs the individual will replenish their supply via their peer to peer connection when they desire more images to satisfy their sexual interest in children. This procurement and purging cycle results in evidence of their current child pornography images being easily located on their computer as well as evidence of their deleted material still remaining on their computer which can be recovered by a forensic computer examiner.

### SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

23.    Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components, or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

- Computer storage devices (like hard drives (both internal and external), digital versatile disks (DVDs), compact disks (CDs), diskettes, tapes, removable digital media, and other forms of digital media) can store the equivalent of hundreds of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site; and

16

- Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure, which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

24.    In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit (CPU). In cases involving child pornography where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues. In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software that may have been used to create the data (whether stored on hard drives or on external media).

25.    In addition, there is probable cause to believe that the computer and its storage devices, the monitor, keyboard, and modem are all instrumentalities of the crime(s), within the meaning of Title 18, United States Code, Sections 2251 through 2256, and should all be seized as such.

## REQUEST TO SEAL

26.     It is further requested that this Affidavit be sealed by the Court until such time as the Court directs otherwise. Given the confidential nature of this investigation, disclosure would severely jeopardize the investigation in that it might alert the target of the investigation at the Subject Premises to the existence of an investigation and likely lead to the destruction and concealment of evidence, and/or flight.

## CONCLUSION

27.     Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that an individual at the Subject Premises described above is involved in possessing child pornography. I respectfully submit that there is probable cause to believe that an individual in the residence described above, the Subject Premises, therefore has violated Title 18, United States Code, Sections 2252 and 2252A. Additionally, there is probable cause to believe that evidence of the commission of criminal offenses, namely, violations of Title 18, United States Code, Sections 2252 and 2252A, is located in the residence described above, and this evidence, listed in Attachment B to this affidavit, which is incorporated herein by reference, is contraband, the fruits of crime, or things otherwise criminally possessed, or property that is or has been used as the means of committing the foregoing offenses.

28.     I therefore respectfully request that the attached warrant be issued authorizing the search of the Subject Premises further described in Attachment A and seizure of the items listed in Attachment B.

Respectfully submitted,

s/Michael Carter

_____
Michael Carter, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
this _27th_ day of November, 2018.
s/Eric Long

_____
Eric I. Long, Magistrate Judge
United States District Court

**Attachment A**

*Property to be Searched*

The Subject Premises, located at 607 Wingstem Drive, Saint Joseph, Illinois 61873, a tan colored two story residence with dark colored shutters and the numbers "607" displayed above the garage door, to include any locked containers located therein, any vehicles parked upon the property associated with the dwelling, as well as any computer, smartphone and computer media located therein where the items specified in Attachment B may be found.

**Attachment B**

*Particular Items to Be Seized*

1.      Computer(s), computer hardware, computer software, removable digital media, computer related documentation, computer passwords and data security devices, videotapes, video recording devices, video recording players, and video display monitors that may be, or are used to:  visually depict child pornography or child erotica; display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess, or receive child pornography, child erotica, or information pertaining to an interest in child pornography or child erotica.

2.      Any and all computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

3.      Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession, receipt, or distribution of child pornography as defined in Title 18, United States Code, Section 2256(8) or to the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct as defined in Title 18, United States Code, Section 2256(2).

4.      In any format and medium, all originals, computer files, copies, and negatives of child pornography as defined in Title 18, United States Code, Section 2256(8), visual depictions of minors engaged in sexually explicit conduct as defined in Title 18, United States Code, Section 2256(2), or child erotica.

5.      Any and all address books, names, and lists of names and addresses of individuals who may have been in communication by use of the computer or by other means for the purpose of distributing or receiving child pornography as defined in Title 18, United States Code, Section 2256(8) or visual depictions of minors engaged in sexually explicit conduct as defined in Title 18, United States Code, Section 2256(2).

6.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages,

chat logs and electronic messages, and handwritten notes), identifying persons transmitting, through interstate or foreign commerce by any means, including, but not limited to, by the United States Mail or by computer, any child pornography as defined in Tile 18, United States Code, Section 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2).

7.     Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, other digital data files and web cache information) concerning the receipt, transmission, or possession of child pornography as defined in Title 18, United States Code, Section 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2).

8.     Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

9.     Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

10.     Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) that concern any accounts with an Internet Service Provider.

11.     Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show

connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

12.     Any and all visual depictions of minors.

13.     Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography as defined in Title 18, United States Code, Section 2256(8) or any visual depiction of minors engaged in sexually explicit conduct,  as defined in Title 18, United States Code, Section 2256(2).

14.     Any and all documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to occupancy or ownership of the premises described above, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, mail envelopes, or addressed correspondence.

15.     Any and all notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2).

16.     Any and all locked safes or other locked containers that may contain evidence of the commission of criminal offenses, namely, violations of Title 18, United States Code, Sections 2252 and 2252A.

17.     Any and all evidence pertaining to the dates and times of access of the computer or cell phone, the use or knowledge of Microsoft Accounts, and internet searches pertaining to the possession or dissemination of child pornography.

18.     Any and all evidence, data or information pertaining to internet history regarding the possession or dissemination of child pornography.

19.    Any and all evidence, data or information pertaining to any e-mail addresses that WILLIAM BELL uses.

As used above, the terms "records" and "information" refer to all forms of creation or storage, any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as prints, videotapes, motion pictures, or photocopies).

The term "computer" refers to all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions: desktop computers, notebook computers, mobile phones, tablets, server computers, smart phones, and network hardware.

The term "storage medium" refers to any physical object upon which computer data can be recorded.  Examples are hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

During the course of the search, photographs of the searched premises may also be taken to record the condition thereof and/or the location of items therein.